David I. Swan, Esq. (VSB No. 75632)
Kenneth M. Misken (VSB No. 72207)
McGuireWoods LLP
1750 Tysons Blvd., Suite 1800
McLean, VA 22102-4215
Telephone: (703) 712-5000
Facsimile: (703) 712-5050

W. Thad Adams, III, Esq.
Adams Law Group
Oliff & Berridge, PLC
Suite 2350 Charlotte Plaza
201 College Street
Charlotte, NC 28244
Telephone: (704) 375-9249

*Attorneys for Carotek, Inc., and
Event Capture Systems, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| EQUAPHOR INCORPORATED, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Bankruptcy No. 10-20490 |
| _____ | ) | |

### OBJECTION TO TRUSTEE'S MOTION TO APPROVE SALE
### OF ASSETS OF PROPERTY OF THE ESTATE AT
### PUBLIC AUCTION DURING COURT HEARING

AND NOW, come Carotek, Inc. ("Carotek") and Event Capture Systems, LLC ("ECS")
and file an Objection to the Motion of Kevin R. McCarthy, Chapter 7 Trustee (the "Trustee") to
Approve Sale of Property of the Estate at Public Auction during Court Hearing (the "Sale
Motion"), and in support of the Objection, state as follows:

1.      On December 16, 2010 (the "Petition Date"), Equaphor Incorporated (the
"Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11 of the Untied States
Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District
of Virginia (the "Bankruptcy Court").

2.      Kevin R. McCarthy, Esquire has been appointed as the Chapter 7 Trustee for the
Debtor.  James W. Dechman is the Debtor Designee.

3.      Mr. Dechman is the Debtor's President and is a shareholder.  Mr. Dechman is
also the managing member and 50% owner of Kobayashi Ventures, LLC ("Kobayashi"), and the
managing member and 40% owner of Monitoring Technology, LLC ("Monitoring Technology").
Monitoring Technology is a shareholder of the Debtor.  See Debtor's Statement of Financial
Affairs ("SOFA") [Docket Nos. 12, 17]; Hr'g Tr. 65-66, May 2, 2011.  A copy of the May 2, 2011
Hearing Transcript is attached hereto as Exhibit A.  A copy of the April 26, 2011 Hearing
Transcript is attached hereto as Exhibit B.

4.      In October 2007, Kobayashi purchased a group of patents from International
Paper for $225,000, including an immediate cash payment of $75,000 and 50% of future
royalties which was later settled for an additional payment of $150,000.  Hr'g Tr. 66-70, 92-95.

5.      Prior to Kobayashi's acquisition of the patents, International Paper had
demanded royalty payments of $640,000 from the Debtor, which the Debtor disputed and
refused to pay.  After Kobayashi's acquisition of the patents, it required the Debtor to pay
approximately $900,000 of previously disputed royalties.  Hr'g Tr. 101-105, 123-128.

6.      Kobayashi also alleged a royalty claim against Carotek and ECS, as a result of
acquiring the patents.  Pending in the United States District Court for the Southern District of
New York at C.A. No. 1:07-CV-11163-NRB is a Complaint for Declaratory Judgment and for
Affirmative Monetary Relief filed by Carotek and ECS, and a Counterclaim originally filed by
Kobayashi against Carotek and ECS in the amount of $8.5 million (the "Patent Litigation").  Hr'g
Tr. 79.

7.      The basis of Carotek's and ECS's affirmative claims in the Patent Litigation
relates to letters that the Defendants sent to their largest customers, falsely and maliciously
asserting patent infringement claims and that the their customers had no right to use their
products.  These letters had a devastating effect on Carotek's and ECS' businesses, causing
them to lose millions in revenue from their customers.  Carotek and ECS have each filed a proof

\31616425.3

of claim in this bankruptcy case in the estimated amount of $4 million.  Proofs of Claim Nos. 33

and 34, Hr'g Tr. 74-77.

8.      After an adverse ruling in the Patent Litigation, in which the District Court on

August 31, 2009 held that Kobayashi did not have standing to sue Carotek for pre-acquisition

infringements, Kobayashi on or about September 30, 2009 sold certain of the patents to the

Debtor for $3.45 million (which included the $900,000 in accrued royalties from the Debtor

referenced in paragraph 5 above).  Mr. Dechman arranged this insider transfer of the patents

from Kobayashi to the Debtor, despite having previously misinformed the board of directors in

September 2007 that the Debtor could not own the patents.[1]  See SOFA [Docket No. 12];

Derivative Plaintiff's Objection [Docket No. 51], at p. 13, n. 20; Hr'g Tr. 148.

9.      This patent sale from Kobayashi to the Debtor was part of a set of transactions

occurring on or about September 30, 2009, which (a) transferred the Debtor's Smart Advisor

Video business to Cognex Corporation for $5 million; (b) transferred the Debtor's Hindsight

Video business and Smart Advisor Vibration business to Monitoring Technology for

approximately $1.5 million; and (c) the Debtor issued a $5.2 million liquidating dividend to its

preferred shareholders, which included Monitoring Technology[2].  See SOFA [Docket No. 12].

10.     As a result of these transactions, the Debtor became a non-operating corpse,

owning no assets other than the patents and a moderate amount of cash to pay professionals in

the Patent Litigation.  Kobayashi then moved to have the Debtor substituted for Kobayashi in

the Patent Litigation, in an effort to shield itself from liability and which exposed the Debtor to

significant liability.

---

[1] In addition to the $3.45 million in sale consideration, the Debtor was also obligated to pay Kobayashi any royalties it received on account of the patents over the next 12 months.  At this time, Kobayashi was on the verge of settling with Papertech, Inc. in another patent litigation case for $690,000.  After this amount was paid to Kobayashi, the total sale consideration increased to more than $4.1 million, plus an ongoing patent management fee which the Debtor paid to Kobayashi.  See Hr'g Tr. 108-110; Derivative Plaintiff's Objection [Docket No. 51], at p.13.

[2] Monitoring Technology received 43.5% of the Liquidating Dividend.  Hr'g Tr. 73-74; [Docket no. 17].

\31616425.3

11. In August 2010, certain shareholders filed a derivative action complaint against the Debtor (as nominal Defendant) and other defendants including Dechman, Monitoring Technology, and Kobayashi, challenging among other things, the patent sales and other transactions outlined above (the "Shareholder Derivative Litigation"). Several months later, the Debtor had exhausted all remaining cash to legal professionals defending the Patent Litigation and the Shareholder Derivative Litigation. Hr'g Tr. 130.

12. In December, 2010, the Debtor filed bankruptcy under Chapter 7. The patents are scheduled with a value of "unknown." The counterclaims against Carotek and ECS are scheduled with a value of "unknown." The claims of Carotek and ECS are scheduled as unliquidated, disputed, and unknown. The only other claims scheduled are insider claims of Kobayashi and Monitoring Technology in the total amount of approximately $520,000 and legal fee claims of approximately $250,000. See Debtor's Schedules [Docket No. 12].

13. On January 21, 2011, Carotek and ECS filed a Motion for Relief from the Automatic Stay, in order to continue with the Patent Litigation. See [Docket No. 22]. The Trustee opposed the Motion for Relief while he attempted to structure an insider deal with Kobayashi.

14. On April 1, 2011, the Trustee filed a Motion to Sell Assets of the Estate Free and Clear of Claims and Other Interests and to Compromise Related Claims, which was designed by Kobayashi to repurchase the patents and the Patent Litigation free and clear of the Carotek claims, and obtain releases for all of the insiders from the estate and from the Shareholder Derivative Litigation. [Docket No. 44]. Both Carotek, ECS, and the derivative shareholder plaintiffs filed objections. [Docket Nos. 49 and 51, respectively], and the Court conducted evidentiary hearings on April 26, 2011 and May 2, 2011.

15. Prior to completion of the evidentiary hearings, Carotek and ECS offered the Trustee and the entities controlled by Mr. Dechman a joint release of claims in the Patent

\31616425.3

Litigation and the bankruptcy case.  The Trustee deferred to Mr. Dechman, who refused the offer.

16.    The Court denied the Motion to Sell and to Compromise.  <u>See</u> Order Denying Motion to Sell and to Compromise [Docket No. 60].  At the conclusion of testimony and closing argument, the Court made the following observation about the bankruptcy case:

> "I think this comes close to a bad-faith filing, to be very frank; and one of the things I have considered is whether I should sua sponte dismiss this case as a bad-faith filing but I'm not going to do that but I am also not going to approve this proposed sale and compromise."

<u>See</u> Hr'g Tr. 169-170.

17.    In closing argument, Carotek and ECS offered an alternate proposal pursuant to which it would purchase the patents for $250,000 (a sufficient amount to satisfy the non-insider creditors), waive its $4 million claims, and take assignment of a preference claim.  In response, the Court observed that this alternative, combined with the engagement of counsel to the derivative shareholders to pursue claims on a contingency basis, would relieve the estate of the "real dilemma" of expensive litigation, and gave the parties two weeks to work that out.  Hr'g Tr. 154-156, 170.

18.    Instead, the Trustee filed a second Sale Motion, to auction the patents free and clear of claims with a minimum bid of $100,000.

## LEGAL ARGUMENT

19.    The Sale Motion should be denied.  The sale of assets under § 363 of the Bankruptcy Code must be supported by a sound business reason and a sound exercise of business judgment.  <u>See</u> <u>e.g.</u> <u>In re Condere Corp.</u>, 228 B.R. 615 (Bankr. S.D. Miss. 1998).  Courts also consider whether the sale is (1) proposed in good faith; (2) fair and equitable; and (3) in the best interests of the estate.  <u>WBG P'ship v. Commonwealth of Va. Dep't of Med. Assistance Servs.</u>, 189 B.R. 97 (Bankr. E.D. Va. 1995).  The price to be paid should be fair and reasonable.  <u>Stephens Indus., Inc. v. McClung</u>, 789 F.2d 386 (6th Cir. 1986).  When the sale

\31616425.3

involves an insider, the court will increase its scrutiny, even if the sale is proposed by a trustee.

See In re Blixeth, 2010 Bankr. LEXIS 585 (Bankr. D. Mont. 2010) (sale procedures denied due

to trustee's failure to test the market prior to proposing the sale).

**A.     The Sale Motion Should Be Denied Because the Trustee Has Not Adequately
         Exposed the Assets to the Marketplace**

20.    Under the Debtor's influence, the Trustee did not subject the patents to a sale

process.  The Trustee did not have the patents valued.  the Trustee did not engage or seek the

advise of a broker or selling agent.  The Trustee did not market the patents himself, other than

negotiating with the Debtor's designate and asking current and former patent litigants to bid.

See Hr'g Tr. 51-55.

21.    In fact, the Trustee focused only on selling the patents to Mr. Dechman or a

Dechman controlled entity.  After the Court refused to approve the sale to Kobayashi, and after

Carotek/ECS reaffirmed in writing its offer to purchase the patents and other assets for

$250,000 and claim waivers, the Trustee spurned Carotek and went back to Kobayashi.

Ultimately, the Trustee decided to open the bidding at $150,000 less than the Carotek offer.

22.    The Carotek offer provided the estate with an opportunity to satisfy all non-insider

claims in full, for $250,000 in sale consideration, as the insider claims should be equitably

subordinated under § 510(c) of the Bankruptcy Code and/or disallowed under § 502(d) of the

Bankruptcy Code.  This would then allow any recovery in the shareholder litigation to benefit the

shareholders.  In contrast, the Sale Motion has the potential of generating a fraction of that sale

consideration for an exponentially larger claims pool.  As such, the Sale Motion is not fair and

equitable and is not in the best interest of the bankruptcy estate.

**B.     If the Court Determines that the Auction Should Go Forward, then Kobayashi (or
         other Insider Controlled Entity) Should Not Be Qualified to Bid**

23.    "When a bankruptcy court authorizes a sale of assets pursuant to section

363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser."  In re

Abbots Dairies of Penn., Inc., 788 F.2d 143, 149-50 (3rd Cir. 1986).  A sale to an insider does

\31616425.3

not constitute bad faith *per se*, but such transactions are subject to heightened scrutiny.  In re

XACT Telesolutions, Inc., 2006 U.S. Dist. LEXIS 621 (D. Md. 2006).  By applying heightened

scrutiny to any potential purchase by an insider, the court advances the public policy of assuring

that "the conduct of  bankruptcy proceedings not only should be right but must seem right."  In

re Bidermann Indus. U.S.A. Inc., 203 B.R. 547, 549 (Bankr. S.D.N.Y. 1997), (citing In re Ira

Haupt & Co., 361 F.2d 164, 168 (2d Cir. 1966)).

24.     In In re W.A. Mallory Company, Inc., 214 B.R. 834 (Bankr. E.D. Va. 1997), the

Court refused to approve four proposed section 363 sales, holding that the corporate debtor

failed to carry its burden of demonstrating that the sales were proposed in good faith.   In that

case, the Court was troubled that the proposed sales were to insiders of the corporation and

expressed grave concerns as to whether the proposed sales were "truly at arm's length or an

attempt by the debtor to abuse the bankruptcy process to discharge unwanted debt."  Id. at 837.

Finding no basis upon which it could conclude that the proposed sales were fair and

reasonable, and finding that the sale proponent had not met its burden to show good faith, this

Court sustained the IRS' objections to the sales proposed in Mallory. Id.

25.     Similarly, this Court should sustain the objection of Carotek and ECS to the sale

proposed in this case and disqualify the insiders from bidding because on the record of this

case, they cannot establish good faith under normal scrutiny, let alone the heightened scrutiny

that applies to insiders.

26.     The evidence provided in this case and summarized above demonstrates that

the insiders have not been acting in good faith.  Taking out the releases from the prior deal, and

selling the assets under the pretext of an auction, does not cleanse their past improper actions

and current improper motives.  The Trustee is compelled to engage counsel to investigate prior

transactions involving the patents; he cannot at the same time qualify a litigation target to bid on

the asset.

\31616425.3

WHEREFORE, Carotek and ECS respectfully request that the Sale Motion be denied.


Dated:  June 8, 2011                              Respectfully submitted,


                                                  /s/  David I. Swan
                                                  David I. Swan, Esq. (VSB No. 75632)
                                                  Kenneth M. Misken, Esq. (VSB No. 72207)
                                                  McGuireWoods LLP
                                                  1750 Tysons Blvd., Suite 1800
                                                  McLean, VA 22102-4215
                                                  Telephone: (703) 712-5000
                                                  Facsimile: (703) 712-5050

                                                  W. Thad Adams, III, Esq.
                                                  Adams Law Group
                                                  Oliff & Berridge, PLC
                                                  Suite 2350 Charlotte Plaza
                                                  201 College Street
                                                  Charlotte, NC 28244
                                                  Telephone: (704) 375-9249

                                                  *Attorneys for Carotek, Inc., and
                                                      Event Capture Systems, LLC*

\31616425.3