**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| EQUAPHOR INCORPORATED, ) | Chapter 7 |
| ) | |
| Debtor. ) | Bankruptcy No. 10-20490 |
| _____ ) | |

**CAROTEK, INC.'S MOTION FOR (I) STAY OF THE ORDER GRANTING
TRUSTEE'S MOTION TO APPROVE SALE OF PROPERTY OF THE ESTATE AT
PUBLIC AUCTION DURING COURT HEARING AND APPROVING SALE TO
KOBAYASHI VENTURES, LLC AND (II) APPROVAL OF SUPERSEDEAS BOND**

AND NOW, comes Carotek, Inc. ("Carotek") and files this motion ("Motion for Stay") requesting the Court to stay the Order Granting Trustee's Motion to Approve Sale of Property of the Estate at Public Auction During Court Hearing and Approving Sale to Kobayashi Ventures, LLC [Docket No. 78]. In support of this Motion for Stay, Carotek respectfully submits as follows:

### I.     BACKGROUND

1.     On December 16, 2010 (the "Petition Date"), Equaphor Incorporated (the "Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").

2.     Kevin R. McCarthy, Esquire has been appointed as the Chapter 7 Trustee for the Debtor. James Dechman is the Debtor Designee.

3.     Mr. Dechman is the Debtor's President and is a shareholder. Mr. Dechman is also the managing member and 50% owner of Kobayashi Ventures, LLC ("Kobayashi"), and the

managing member and 40% owner of Monitoring Technology, LLC ("Monitoring Technology"). Monitoring Technology is a shareholder of the Debtor. See Debtor's Statement of Financial Affairs ("SOFA") [Docket Nos. 12, 17]; Hr'g Tr. 65-66, May 2, 2011.

4. In October 2007, Kobayashi purchased a group of patents from International Paper for $225,000, including an immediate cash payment of $75,000 and 50% of future royalties which was later settled for an additional payment of $150,000. Hr'g Tr. 66-70, 92-95.

5. Prior to Kobayashi's acquisition of the patents, International Paper had demanded royalty payments of $640,000 from the Debtor, which the Debtor disputed and refused to pay. After Kobayashi's acquisition of the patents, it required the Debtor to pay approximately $900,000 of previously disputed royalties. Hr'g Tr. 101-105, 123-128.

6. Kobayashi also alleged a royalty claim against Carotek and ECS, as a result of acquiring the patents. Pending in the United States District Court for the Southern District of New York at C.A. No. 1:07-CV-11163-NRB is a Complaint for Declaratory Judgment and for Affirmative Monetary Relief filed by Carotek and ECS, and a Counterclaim originally filed by Kobayashi against Carotek and ECS in the amount of $8.5 million (the "Patent Litigation"). Hr'g Tr. 79.

7. The basis of Carotek's and ECS's affirmative claims in the Patent Litigation relates to letters that the Defendants sent to their largest customers, falsely and maliciously asserting patent infringement claims and that their customers had no right to use their products. These letters had a devastating effect on Carotek's and ECS' businesses, causing them to lose millions in revenue from their customers. Carotek and ECS have each filed a proof of claim in

this bankruptcy case in the estimated amount of $4 million. Proofs of Claim Nos. 33 and 34, Hr'g Tr. 74-77.

8. After an adverse ruling in the Patent Litigation, in which the District Court on August 31, 2009, held that Kobayashi did not have standing to sue Carotek for pre-acquisition infringements, Kobayashi, on or about September 30, 2009, sold certain of the patents to the Debtor for $3.45 million (which included the $900,000 in accrued royalties from the Debtor referenced in paragraph 5 above). Mr. Dechman arranged this insider transfer of the patents from Kobayashi to the Debtor, despite having previously misinformed the board of directors in September 2007 that the Debtor could not own the patents.[1] See SOFA [Docket No. 12]; Derivative Plaintiff's Objection [Docket No. 51], at p. 13, n. 20; Hr'g Tr. 148.

9. This patent sale from Kobayashi to the Debtor was part of a set of transactions occurring on or about September 30, 2009, which (a) transferred the Debtor's Smart Advisor Video business to Cognex Corporation for $5 million; (b) transferred the Debtor's Hindsight Video business and Smart Advisor Vibration business to Monitoring Technology for approximately $1.5 million; and (c) the Debtor issued a $5.2 million liquidating dividend to its preferred shareholders, which included Monitoring Technology[2]. See SOFA [Docket No. 12].

10. As a result of these transactions, the Debtor became a non-operating corpse, owning no assets other than the patents and a moderate amount of cash to pay professionals in the Patent Litigation. Kobayashi then moved to have the Debtor substituted for Kobayashi in the

---

[1] In addition to the $3.45 million in sale consideration, the Debtor was also obligated to pay Kobayashi any royalties it received on account of the patents over the next 12 months. At this time, Kobayashi was on the verge of settling with Papertech, Inc. in another patent litigation case for $690,000. After this amount was paid to Kobayashi, the total sale consideration increased to more than $4.1 million, plus an ongoing patent management fee which the Debtor paid to Kobayashi. See Hr'g Tr. 108-110; Derivative Plaintiff's Objection [Docket No. 51], at p.13.

[2] Monitoring Technology received 43.5% of the Liquidating Dividend. Hr'g Tr. 73-74; [Docket no. 17].

3

Patent Litigation, in an effort to shield itself from liability and which exposed the Debtor to significant liability.

11.  In August 2010, certain shareholders filed a derivative action complaint against the Debtor (as nominal Defendant) and other defendants including Dechman, Monitoring Technology, and Kobayashi, challenging among other things, the patent sales and other transactions outlined above (the "Shareholder Derivative Litigation"). Several months later, the Debtor had exhausted all remaining cash to legal professionals defending the Patent Litigation and the Shareholder Derivative Litigation. Hr'g Tr. 130.

12.  In December 2010, the Debtor filed bankruptcy under Chapter 7. The patents are scheduled with a value of "unknown." The counterclaims against Carotek and ECS are scheduled with a value of "unknown." The claims of Carotek and ECS are scheduled as unliquidated, disputed, and unknown. The only other claims scheduled are insider claims of Kobayashi and Monitoring Technology in the total amount of approximately $520,000 and legal fee claims of approximately $250,000. See Debtor's Schedules [Docket No. 12].

13.  On January 21, 2011, Carotek and ECS filed a Motion for Relief from the Automatic Stay, in order to continue with the Patent Litigation. See [Docket No. 22]. The Trustee opposed the Motion for Relief while he attempted to structure an insider deal with Kobayashi.

14.  On April 1, 2011, the Trustee filed a Motion to Sell Assets of the Estate Free and Clear of Claims and Other Interests and to Compromise Related Claims (the "Sale Motion"), which was designed by Kobayashi to repurchase the patents and the Patent Litigation free and clear of the Carotek claims, and obtain releases for all of the insiders from the estate and from

4

the Shareholder Derivative Litigation. [Docket No. 44]. Both Carotek, ECS, and the derivative shareholder plaintiffs filed objections to the Sale Motion. [Docket Nos. 49 and 51, respectively], and the Court conducted evidentiary hearings on April 26, 2011 and May 2, 2011.

15. Prior to completion of the evidentiary hearings, Carotek and ECS offered the Trustee and the entities controlled by Mr. Dechman a joint release of claims in the Patent Litigation and the bankruptcy case. The Trustee deferred to Mr. Dechman, who refused the offer.

16. The Court denied the Sale Motion. See Order Denying Motion to Sell and to Compromise [Docket No. 60]. At the conclusion of testimony and closing argument, the Court made the following observation about the bankruptcy case:

> "I think this comes close to a bad-faith filing, to be very frank; and one of the things I have considered is whether I should sua sponte dismiss this case as a bad-faith filing but I'm not going to do that but I am also not going to approve this proposed sale and compromise."

See Hr'g Tr. 169-170.

17. In closing argument, Carotek and ECS offered an alternate proposal pursuant to which it would purchase the patents for $250,000 (a sufficient amount to satisfy the non-insider creditors), waive its $4 million claims, and take assignment of a preference claim. In response, the Court observed that this alternative, combined with the engagement of counsel to the derivative shareholders to pursue claims on a contingency basis, would relieve the estate of the "real dilemma" of expensive litigation, and gave the parties two weeks to work that out. Hr'g Tr. 154-156, 170.

5

18. Instead, on May 20, 2011, the Trustee filed a Motion to Approve Sale of Property of the Estate at Public Auction During Court Hearing (the "Second Sale Motion") and a Motion to Shorten Time to Object to His Motion to Approve Sale of Property. In the Second Sale Motion, the Trustee proposed to auction the patents free and clear of claims with a minimum bid of $100,000, based upon an offer he had received from Kobayashi in that amount. [Docket Nos. 65 and 67, respectively].

19. On June 8, 2011, Carotek filed an Objection to the Second Sale Motion, reaffirming its offer for the patents, and asserting that the Second Sale Motion should be denied because (i) Kobayashi's pre-petition conduct as demonstrated by the evidence in the case record, should disqualify it from bidding, and (ii) the sale process was not marketed or adequately exposed to the public. For similar reasons that the Court denied the first Sale Motion to Kobayashi with exculpation for a group of insiders, Carotek argued that Kobayashi should not be authorized to bid or purchase, under Section 363(b), the assets it previously transferred to the Debtor in a fraudulent conveyance.

20. At the hearing on June 9, 2011, the Court overruled Carotek's objections to the Second Sale Motion, and on June 16, 2011, the Court entered the Order Granting Trustee's Motion to Approve Sale of Property of the Estate at Public Auction During Court Hearing and Approving Sale to Kobayashi Ventures, LLC (the "Sale Order"). The Sale Order provides that closing may "take place on the later of June 24, 2011 or the next business day after expiration of fourteen days from the date of entry of the Order" consistent with Bankruptcy Rule 6004(h); therefore, closing may occur on July 1, 2011 despite an appeal, unless a stay pending appeal is granted on or before June 30, 2011.

## II.    REQUEST FOR STAY PENDING APPEAL

21.    By this Motion for Stay, Carotek moves, in accordance with Bankruptcy Rule 8005, for a stay of the Sale Order, pending appeal.  Bankruptcy Rule 8005 allows a bankruptcy court, in the first instance, to stay a proceeding in its discretion pending appeal.  Bankruptcy Rule 8005 provides, in relevant part:

> A motion for stay of the judgment, order, or decrees of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy court in the first instance.  Nothwithstanding Rule 7062 . . . , the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during pendency of an appeal on such terms as will protect the rights of all parties in interest.

Fed. R. Bankr. P. 8005.

22.    The granting of a stay pending appeal under Bankruptcy Rule 8005 is within the discretion of the court.  In re Dye, 2007 Bankr. LEXIS 2927, *3 (Bankr. N.D. Ga. July 24, 2007). "That discretion is by design a flexible tool which permits the bankruptcy court to tailor relief to the circumstances of the particular case."  Id.

23.    The criteria to be considered in granting a stay pending appeal under Bankruptcy Rule 8005 are:

(a)    The likelihood that the movant will prevail on the merits of the appeal;

(b)    Whether the movant will suffer irreparable injury if the stay is denied;

(c)    Whether other parties will not be substantially harmed by the stay; and

(d)    Whether the public interest will be served by granting the stay.

Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1992); Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970); Hoekstra v. Oak Cluster Community Council (In re Hoekstra), 268 B.R. 904, 906 (Bankr. E.D. Va. 2000).  In assigning weight to each factor, a court

7

will seek to balance the harm to the movant against the harm to other parties." Zurich American Insurance Company v. Tessler (In re J.A. Jones, Inc.), 2006 U.S. Dist. LEXIS 20713, *3 (W.D.N.C. April 12, 2006).

24. The stay of the Sale Order pending Carotek's appeal is justified under each of these factors.

A. **THE APPEAL OF THE SALE ORDER INVOLVES A LEGAL ISSUE OF FIRST IMPRESSION SUCH THAT THERE IS A SUBSTANTIAL POSSIBILITY CAROTEK WILL PREVAIL ON APPEAL.**

25. Courts have found that the first factor justifying a stay pending appeal – the likelihood that the movant will prevail on the merits of the appeal – can be satisfied through a showing that the appeal involves a novel legal issue of first impression. As the Bankruptcy Court for the Western District of Texas noted while granting a motion for stay pending appeal,

> Appellants . . . satisfy the likelihood of success on the merits element, as applied to appeals. Untested legal questions and those on which there [are] a divergence of authority are ripe for appellate review. The appellants' likelihood of prevailing on the merits in this case is at least colorable. Appellants raise a substantial issue of law untested at the circuit level . . . . Although this court ruled as a matter of law against plaintiffs, that same court is nonetheless reluctant to predict the outcome of the appeal. Questions of law are always subject to *de novo* review on appeal. It would be highly inappropriate for this court to abbreviate the parties' practical ability to test this important legal question by denying a stay that would maintain the status quo during its pendency.

Gleasman v. Jones, Day, Reavis & Pogue (In re Gleasman, 111 B.R. 595, 601-2 (Bankr. W.D. Tex. 1990)(internal citation omitted).

26. Likewise, the District Court for the Northern District of Illinois in In re Mader, 100 B.R. 989, 991 (N.D. Ill. 1989), in considering the likelihood of the movant's success for purposes of granting a stay, noted:

> This Court does not intend to go so far as to actually determine the merits of the legal issue which will be presented on appeal. Suffice to say, however, that we have not found, nor been cited to, any controlling authority on this precise question, and the novel legal issue presented is not one in which the debtor has no likelihood of success. This case will likely present an issue of first impression and, on balance, the likelihood of success on the merits does not appear to weigh heavily in favor of, or against, any parties to this proceeding.

Id.

27. Carotek's appeal of the Sale Order presents a legal issue of first impression, namely whether despite an insider's prepetition bad faith and prepetition bad acts, the insider may qualify as a purchaser as estate assets. "When a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser." In re Abbots Dairies of Penn., Inc., 788 F.2d 143, 149-50 (3rd Cir. 1986). Although a sale to an insider does not constitute bad faith *per se*, sales to insiders are subject to heightened scrutiny. In re XACT Telesolutions, Inc., 2006 U.S. Dist. LEXIS 621 (D. Md. 2006). By applying heightened scrutiny to any potential purchase by an insider, the court advances the public policy of assuring that "the conduct of bankruptcy proceedings not only should be right but must seem right." In re Bidermann Indus. U.S.A. Inc., 203 B.R. 547, 549 (Bankr. S.D.N.Y. 2997)(citing In re Ira Haupt & Co., 361 F.2d 164, 168 (2d Cir. 1966)).

28. In In re Tamojira, Inc., 212 B.R. 824 (Bankr. E.D. Va. 1997)(Tice, J), the Court was asked to make a good faith finding as to the purchaser. The Court explained that no evidence was presented regarding the purchaser's good faith, and in fact, the trustee had "admitted that he knew nothing about [the insider-purchaser] and the history behind [the insider-purchaser's ownership of] one-half interest in the [estate's property]." The Court further explained that there were no facts on which a good faith finding could be made, implying that the

9

evidence of a purchaser's pre-petition conduct is relevant in determining good faith of the insider purchaser.

29. In In re W.A. Mallory Company, Inc., 214 B.R. 834 (Bankr. E.D. Va. 1997)(Adams, J.), the Court refused to approve four proposed § 363 sales because the debtor failed to carry its burden of demonstrating that the sales were proposed in good faith. In that case, the Court was troubled that the proposed sales to insiders of the corporation and expressed grave concerns as to whether the proposed sales were "truly at arm's length or an attempt by the debtor to abuse the bankruptcy process to discharge unwanted debt." Id., at 837.

30. Carotek requested this Court to sustain its objection to the sale proposed by the Chapter 7 Trustee and to disqualify the insiders from bidding because on the record of the case, neither the Chapter 7 Trustee nor the insider purchaser could establish the insider's good faith under any scrutiny, let alone the heightened scrutiny that applies to insiders. Moreover, Carotek objected to the sale process in that the Chapter 7 Trustee failed to expose the assets beyond the small circle of parties involved in the Patent Litigation. Despite the evidence of the insider's prepetition bad faith and bad acts and the lack of marketing the assets to other potential bidders, the Court approved the insider sale.

31. In the Fourth Circuit, cases have determined the good faith conduct of a buyer post-petition and the presence or absence of fraud or collusion in determining whether to moot an appeal post-closing under § 363(m). But this case presents the unique issue of whether bad faith conduct by an insider pre-petition under a heightened scrutiny may disqualify the insider from bidding or purchasing property of the estate. In fact, the Court, in In re Tamojira, 212 B.R. at 824, f.5, warned trustees and debtors that the Fourth Circuit has suggested that a good faith

10

finding as a prerequisite to qualifying as a purchaser may be a "good idea" and if the Fourth Circuit "chooses to turn its good idea into a mandate, motions to sell will be denied without some evidence of the purchaser's good faith." Therefore, since the appeal of the Sale Order involves a legal issue of first impression in this Circuit, there is a substantial possibility of success on appeal by Carotek, which justifies a stay of the Sale Order.

32.    Courts have found that to satisfy the first prong of the test for a stay pending appeal "requires only a showing of a substantial possibility of success on the merits where other factors are also strong. Such substantial possibility need not rise to the level of likelihood of success." Contrarian Funds LLC v. Aretex, LLC (In re Westpoint Stevens, Inc., 200 U.S. Dist. LEXIS 33725, *14 (S.D.N.Y. May 9, 2007)(internal footnote omitted). "[T]he likelihood of success that need be shown by the movant will vary inversely with the degree of injury the movant will suffer without the stay. If the balance of harm tips decidedly toward the movant, then the movant need not show as strong a likelihood of success on the merits as when the balance tips less decidedly." In re Convenience USA, Inc., 290 B.R. 558, 562 (Bankr. M.D.N.C. 2003); see also Hoekstra, 268 B.R. at 906 ("Obviously, it would be a rare judge who makes a ruling he or she thinks is 'likely' to be reversed on appeal. Nevertheless, judges are often required to rule on 'questions going to the merits so serious, substantial, difficult or doubtful, as to make them fair ground for litigation.' In such a situation, the court concludes that primary weight should be given to the balance of hardships.")(internal quotations omitted).

33.    As described below, the harm to Carotek substantially outweighs any negative impact of a stay pending appeal of the Sale Order.

B.    **CAROTEK WILL SUFFER IRREPARABLE INJURY IN THE ABSENCE OF A STAY OF THE SALE ORDER.**

11

34. The second factor justifying a stay pending appeal is that the moving party will suffer irreparable injury if the stay is denied. This factor also warrants a stay of the Sale Order.

35. Without a stay pending appeal, Carotek will suffer irreparable harm because the appeal may become statutorily and equitably moot. See, e.g., Willemain v. Kivitz (In re Willemain), 764 F.2d 1019 (4th Cir. 1985)(concluding that the appeal was moot when appellant failed to secure a stay pending appeal).

36. Bankruptcy Rule 6004(h) provides an automatic 14 day stay of an order authorizing the sale of property, to provide an appellant the opportunity to secure an extended stay and to post a supersedeas bond pending appeal before the assets transfer. The stay of a § 363 order is particularly important because failure to extend the stay beyond the 14-day period, in effect, could overrule the appeal without the opportunity for it to be decided on the merits.

C. **NEITHER THE BANKRUPTCY ESTATE NOR ANY OTHER PARTY WOULD BE SUBSTANTIALLY HARMED BY A STAY OF THE SALE ORDER.**

37. A stay pending appeal is also justified under the third prong since neither the bankruptcy estate nor any of the Debtor's creditors will be substantially harmed by a stay of the Sale Order pending appeal.

38. A stay pending appeal of the Sale Order will preserve the status quo to allow important legal issues be determined by the appellate court. In re Tolco Properties, Inc., 6 B.R. 490, 491 (Bankr. E.D. Va. 1980)("The Court is of the opinion that the purpose of a stay pending appeal is to maintain the status quo and to prevent harm to the moving party between the time the original order was entered and the decision to appeal."). Preserving the status quo will result in no substantial harm to the bankruptcy estate or creditors.

39. Any negative effect resulting from the delay of the administration of the bankruptcy estate is far outweighed by the harm that would be caused to Carotek. As discussed above, if the Sale Order is not stayed, the appeal may be statutorily and equitably moot, and Carotek would not have the opportunity to proceed on its right to appeal the Sale Order.

**D.   THE PUBLIC INTEREST OF PRESERVING THE STATUS QUO WILL BE SERVED BY A STAY OF THE SALE ORDER.**

40. As to the final prong of the stay analysis, the public interest will be served here by allowing a stay pending appeal because, as noted above, such a stay will preserve the status quo until the appeals court has an opportunity to review the important legal issues raised in this case. "The case law signals a preference in favor of maintaining the status quo." Skinner v. SBA (In re Skinner), 202 B.R. 867, 869 (W.D. Va. 1996)(citing Feller v. Brock, 802 F.2d 722, 727 (4th Cir. 1986).

### III.   REQUEST FOR APPROVAL OF SUPERSEDEAS BOND

41. Bankruptcy Rule 8005 also allows a bankruptcy court to approval a supersedeas bond as a condition of staying an order pending appeal. Carotek will obtain a supersedeas bond from Travelers Insurance in the amount of $100,000 (the amount of the sale of the patents) made out to the Chapter 7 Trustee to protect the bankruptcy estate for any damage that is caused by the stay. See In re Phyllis M. Raskin, 231 B.R. 809 (N.D. Ok. 1997)(explaining that the Bankruptcy Court granted a stay pending appeal with a bond set in the amount of the prospective purchaser's offer for the property). A $100,000 bond is adequate to protect the estate from any potential harm caused by a stay of the Sale Order, although Carotek submits that the estate will not be harmed by the appeal.

13

## IV. CONCLUSION

42. Based on the foregoing, a stay of the Sale order is justified under each of the applicable factors for a stay pending appeal. Failure to extend the stay will have a significant, potentially debilitating effect on Carotek, whereas an extension of the stay will result in no harm due to preservation of the status quo and a supersedeas appeal bond. Accordingly, the Court should grant a stay of the Sale Order pending a determination of the appeal of the Sale Order.

WHEREFORE, Carotek requests that the Court enter an Order:

1. Staying the Sale Order pending a determination of any appeal of the Sale Order;

2. Approving the supersedeas bond in the amount of $100,000 issued by Traveler's Insurance or other approved insurance company.

3. Granting such and further relief as the Court deems just and proper.

Dated: June 21, 2011

Respectfully submitted,

/s/ David I. Swan
David I. Swan, Esq. (VSB No. 75632)
Kenneth M. Misken, Esq. (VSB No. 72207)
McGuireWoods LLP
1750 Tysons Blvd., Suite 1800
McLean, VA 22102-4215
Telephone: (703) 712-5000
Facsimile: (703) 712-5050

W. Thad Adams, III, Esq.
Adams Law Group
Oliff & Berridge, PLC
Suite 2350 Charlotte Plaza
201 College Street
Charlotte, NC 28244
Telephone: (704) 375-9249

Attorneys for Carotek, Inc.

\31849899.4