UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                          *
                                                *
**EQUAPHOR INCORPORATED,**                      *      **Case No. 10-20490-SSM**
                                                *      Chapter 7
_____Debtor._____                               *_____

## OPPOSITION TO CAROTEK, INC.'S MOTION FOR (I) STAY OF ORDER GRANTING TRUSTEE'S MOTION TO APPROVE SALE OF PROPERTY OF THE ESTATE AT PUBLIC AUCTION DURING COURT HEARING AND APPROVING SALE TO KOBAYASHI VENTURES, LLC AND (II) APPROVAL OF SUPERSEDEAS BOND

KOBAYASHI VENTURES, LLC, by counsel, files this opposition to Carotek Inc.'s Motion (the "Motion") for (I) Stay of Order Granting Trustee's Motion to Approve Sale of Property of the Estate at Public Auction During Court Hearing and Approving Sale to Kobayashi Ventures, LLC and (II) Approval of Supersedeas Bond and states as follows:

1.   Equaphor Incorporated (the "Debtor") filed a voluntary chapter 7 petition on December 16, 2010. Kevin R. McCarthy is the duly appointed chapter 7 trustee in this case.

2.   On May 20, 2011, the Trustee filed a motion (the "Sales Motion") for authorization to sell certain patents (the "Patents") by public auction. Carotek, Inc. ("Carotek") filed the only objection, in which it contended that Kobayashi should not be allowed to bid at the auction. It also alleged that the Trustee had not sufficiently marketed the Patents for sale. The hearing (the "Sales Hearing") on the Sales Motion and the proposed auction were scheduled for June 9, 2011 at 9:30 a.m. At the hearing the Trustee testified about his efforts to market the Patents, and the Court was satisfied

---
JAMES W. REYNOLDS, ESQUIRE, VSB NO. 33226
Counsel for Kobayashi Ventures, LLC
**ODIN FELDMAN & PITTLEMAN PC**
9302 Lee Highway, Suite 1100
Fairfax, Virginia 22031
Direct:  703-218-2134
Fax:     703-218-2160
E-Mail:  jim.reynolds@ofplaw.com

by the Trustee's efforts, which were meaningful and significant. The Court also ruled that Kobayashi would be allowed to bid for the Patents. As a result, the Court approved the Trustee's request to sell the Patents by public auction and then conducted the auction in the courtroom. Kobayashi was present for the purpose of bidding, and Carotek also was present.

3. Pursuant to the bidding procedures, which were approved by the Court, Kobayashi made the minimum bid of $100,000.00 for the purchase of the Patents. Carotek did not bid. Instead, it re-newed an offer that it had previously made to the Trustee for the purchase of the Patents and a preference claim (the "Preference Claim") against Stein, Sperling, Bennett, DeJong, Driscoll & Greenfeig, P.C. ("Stein Sperling"). The Court had already determined that the Trustee could not sell the Preference Claim, so in fact Carotek made no bid at all. The Court entered an order on June 16, 2011, approving (a) the auction sale, (b) the bidding procedures and (c) the sale of the Patents to Kobayashi. The Court also determined that Kobayashi is a good faith purchaser for purposes of 11 U.S.C. §363(m).

4. On June 20, 2011, the Court entered an order granting Carotek and Event Capture Systems, LLC ("ECS") relief from the automatic stay effective July 15, 2011, for the purpose of allowing the lawsuit (the "Lawsuit") filed in the United States District Court for the Southern District of New York (the "District Court") to continue. A significant component of the Lawsuit is Carotek's and ECS's challenge to the validity of the Patents. Upon information and belief, the District Court will soon be scheduling and conducting a Markman hearing relating to the validity of the Patents, and the parties will need to quickly gear up and prepare for that hearing.

5.  In support of its Motion, Carotek alleges the same purported facts referenced in its opposition to the Sales Motion. As stated by Kobayashi's counsel at the Sales Hearing, Carotek mischaracterizes these facts. However, having addressed these issues at the Sales Hearing, Kobayashi will not repeat the issues here. For the purposes of this objection, it is sufficient to say that Kobayashi disputes Carotek's characterization of the facts in its opposition to the Sales Motion and in the Motion.

6.  The standard for granting a stay pending appeal is the same one for granting a preliminary injunction. In re Gulf States Steel, Inc. of Alabama, 285 B.R. 739, 741 (Bkrtcy.N.D.Ala. 2002). In order to prevail on its Motion, Carotek must show that (a) there is a likelihood that it will prevail on the merits of its appeal, (b) it will suffer irreparable injury if the stay is denied, (c) other parties will not be substantially harmed by the stay, and (d) the public interest will be served by granting the stay. In re Hoekstra, 268 B.R. 904, 906 (Bkrtcy.E.D.Va. 2000). Carotek's failure to satisfy just one of these factors means the Motion must be denied. Gulf States, 285 B.R. at 741-42. In fact, Carotek has failed to satisfy all four factors. As a result the Motion must be denied.

There is no likelihood that Carotek will prevail in its appeal.

7.  Carotek asserts that its appeal involves a novel legal issue of first impression. Based upon this it contends that there is a "substantial possibility" that it will prevail on the appeal. Motion, p. 8. However, Carotek can point to no applicable case law that supports its theory. Unlike the Hoekstra case, there is no novel legal issue or split of authority pertaining to this matter. Carotek attempts to manufacture a novel legal issue by citing case law that is not remotely applicable. Moreover, the

complete lack of applicable case law shows that Carotek has not come up with a novel legal issue. Carotek is simply grasping at straws.

8.      According to Carotek, the legal issue on appeal is whether an insider can be disqualified from bidding for the purchase of assets in a chapter 7 case based upon alleged prepetition "bad faith" or "bad acts" by the insider. In framing the issue as such, Carotek mischaracterizes the facts and ignores the fact that this Court previously did not make any findings as to bad faith or bad acts in connection with the Trustee's first motion to sell assets. Carotek also relies upon case law pertaining to sales in chapter 11 cases between affiliated parties, as opposed to sales by public auction where the seller is an independent trustee.

9.      In support of its argument Carotek cites several cases that purportedly stand for the proposition that a sale to an insider requires heightened scrutiny by the Court. None of these involve sales by a chapter 7 trustee, and none of the cases are on point. The Abbotts Dairies case involved the sale of property by a chapter 11 debtor-in-possession to an insider. In that case the facts presented a situation where there could have been collusion between the seller and the purchaser who were affiliated parties. See In re Abbotts Dairies of Pennsylvania., Inc., 788 F.2d 143 (3rd Cir. 1986). Here, the Trustee and Kobayashi are not affiliated. Just as importantly, Carotek concedes that there was no collusion between Kobayashi and the Trustee in connection with the sale and that Kobayashi had not acted in bad faith or improperly with reference to the sale. The facts that gave rise to the Court's concerns in Abbotts Dairies are non-existent here.

10. The XACT Telesolutions case similarly dealt with the attempt of debtors-in-possession to sell substantially all of their assets to an affiliated company as part of their plan of reorganization. In re XACT Telesolutions, Inc., 2006 U.S. Dist. LEXIS 621 (2006). In that case the District Court found that the law is "unsettled" regarding whether a bankruptcy court must apply a heightened level of scrutiny to insider transactions. However, Carotek mischaracterizes this case as standing for the proposition that sales to insiders are subject to heightened scrutiny. Motion, p. 9. In fact, the Court in that case specifically stated that it did not need to reach the question of whether a higher standard is required. Accordingly the XACT Telesolutions case does not support Carotek's argument for the need of a heightened level of scrutiny, and it certainly does not stand for that proposition in connection with a sale in a chapter 7 case.

11. Again, the Biderman case involves chapter 11 debtors-in-possession attempting to sell assets to insiders. In re Biderman Industries U.S.A., Inc., 203 B.R. 547 (Bkrtcy.S.D.N.Y. 1997). There, the debtors' chief executive officer was also a principal of the purchaser. While the Court in Biderman does discuss the necessity for heightened scrutiny, the discussion relates to the sale of assets by debtors to fiduciaries in chapter 11 cases. "[S]ales to fiduciaries in chapter 11 cases are not *per se* prohibited, 'but [they] are necessarily subjected to heightened scrutiny because they are rife with the possibility of abuse.'" Biderman, 203 B.R. at 551 (citation omitted). With reference to the sale of assets, the differences between chapter 11 and chapter 7 are manifest. In chapter 11 the debtor is almost always the seller. In chapter 7 the trustee

is the seller. The Court's major concern in Biderman does not exist here. In this matter the trustee is independent and not affiliated with the debtor or any insiders of the debtor.

12. The W.A. Mallory case involves the attempt by the debtor-in-possession to sell its assets to insiders prior to confirmation of its plan. In re W.A. Mallory Co., Inc., 214 B.R. 834 (Bkrtcy.E.D.Va. 1997). In that case the Court employed the "sound business purpose" test and concluded that the sale could not be approved. Again, this case is not remotely on point. There is no operating business in chapter 7, and there is no plan confirmation. Requiring a chapter 7 trustee to meet the "sound business purpose" test prior to selling assets would be absurd.

13. Finally, the Tamojira case does involve the sale of assets by a chapter 7 trustee. However, Carotek entirely misconstrues the ruling in that case. It contends that the case stands for the proposition that the Court should make a good faith finding "as a prerequisite to qualifying" a party as a purchaser. Motion, pgs. 10-11. That is simply not what the case stands for.

14. In Tamojira the Court approved a sale of the debtor's one-half interest by the chapter 7 trustee, and the prospective purchaser subsequently filed a motion to clarify that it was a good faith purchaser pursuant to 11 U.S.C. §363(m). In re Tamojira, Inc., 212 B.R. 824 (Bkrtcy.E.D.Va. 1997). The purpose of the request for a "good faith" finding was to ensure that the order allowing the sale would not be altered in an appeal, unless the sale order was stayed pending the appeal. The case has nothing to do with any purported requirement of a good faith finding before a purchaser is "qualified" to bid. In Tamojira, Judge Tice stated that he had not made a ruling at the sale hearing about whether the purchaser was a good faith purchaser under 11 U.S.C. §363(m). Id. at 826.

In connection with the purchaser's motion for reconsideration, Judge Tice stated that no evidence had been presented on the issue of good faith pursuant to 11 U.S.C. §363(m), so he could not make any such finding. Id.

15. Here, the Court did expressly find that Kobayashi was a good faith purchaser for purposes of 11 U.S.C. §363(m). This finding was based upon the evidence presented. As stated above, Carotek concedes that Kobayashi and the Trustee did not collude in regard to the sale. Moreover, the Trustee testified that Kobayashi did not interfere with his attempts to market the Patents or with the sale process. To the contrary, he stated that members of Kobayashi assisted him in identifying parties who may have been interested in bidding for the assets. Based upon the record, this Court was able to determine that Kobayashi is a good faith purchaser under 11 U.S.C. §363(m). Contrary to Carotek's position, the Tamojira case actually supports the Trustee and Kobayashi.

16. Unlike the chapter 11 cases cited by Carotek, there is no insider transaction here. There is no need for heightened scrutiny, which explains why Carotek can find no cases that support its theory. The Trustee and Kobayashi are not affiliated. Moreover, it is hard to imagine how they could be more independent, especially in light of Carotek's concession that there was no collusion between the two. As a result, the case law that Carotek relies upon to try and create a novel legal issue does not apply.

17. As there is no legitimately novel legal issue here and certainly no split in authority, Carotek can show no likelihood that it will prevail on the merits of its appeal. The cases cited by Carotek refute its theory. Finally, the requirement that the movant must show a likelihood of success increases substantially as the probability of

irreparable injury for the movant decreases if the injunction is not granted. See <u>Direx Israel, Ltd. v. Breakthrough Medical Corp.</u>, 952 F.2d 802, 813 (4th Cir. 1991) (citations omitted). As stated below, Carotek can show no irreparable injury. Accordingly its showing of a likelihood of success must be "clear cut." <u>Id.</u>, citing <u>Maxim's Ltd. v. Badonsky</u>, 772 F.2d 388, 391 (7th Cir.1985). The sale was an open auction in which any one could bid. All parties in interest had sufficient notice of the sale, and the Trustee and Kobayashi are not affiliated. Carotek does not come close to carrying its burden of satisfying this factor.

<u>Carotek will not suffer an irreparable injury if the stay is denied.</u>

18. To prevail, Carotek must make a clear showing of irreparable harm, meaning actual and immediate injury. <u>Direx Israel</u>, 952 F.2d at 812 (citations omitted). It has utterly failed to do so. In fact, it is ironic that Carotek argues it will be irreparably harmed if the Motion is denied, because Carotek did not bid at the sale. When Carotek had the opportunity at the auction to make a competitive bid (or any bid) for the Patents only, it renewed its offer for the purchase of the Patents and the Preference Claim – an offer the Court appropriately rejected because the Trustee can not sell the Preference Claim. Despite having every opportunity to bid at the auction, Carotek refused to do so. It is implausible for it to now argue it will be irreparably harmed if the Motion is not granted.

19. Regardless, Carotek does make this argument, and the sole basis for its alleged irreparable injury is that its appeal may become moot if the Court does not grant the Motion. The majority of Courts have previously rejected this argument as showing irreparable injury. See <u>In re Convenience USA, Inc.</u>, 290 B.R. 558, 563

(Bkrtcy.M.D.N.C. 2003) ("[I]t appears that a majority of cases which have considered the issue have found that the risk that an appeal may become moot does not, standing alone, constitute irreparable injury"). Carotek does not allege any other type of irreparable injury, so the Motion must be denied.

20.    In fact, Carotek has not been harmed by the sale to Kobayashi. This is evident when one examines what would have happened if Kobayashi had been prevented from bidding for the purchase of the Patents. If Carotek had prevailed in its opposition to the Trustee's Sales Motion, no one would have made the minimum acceptable bid. The Trustee would not have been able to sell the Patents for $100,000.00. Moreover, only one other party has made an offer to purchase the Patents only, and that party, PaperTech, was only willing to pay $60,000.00. As the Trustee testified, PaperTech had notice of the auction and the bidding terms and procedures, yet it decided not to participate. This clearly shows it was not interested in paying $100,000.00 or more for the Patents. Carotek has filed a proof of claim in this case and purports to be a creditor. Assuming Carotek actually is a creditor for the purposes of this argument, it, along with the bankruptcy estate as a whole, would actually have been harmed if the Court sustained its objection to the Sales Motion, as no one would have purchased the Patents. At any rate, Carotek can certainly show no injury, let alone irreparable injury, if the Motion is denied.

<u>The Trustee will be substantially harmed if the Motion is granted</u>.

21.    The balance of harms overwhelming favors the Trustee in this matter.

Under that test, the hardship to be sustained by the plaintiff, if the preliminary injunction is not granted, is to be balanced against the harm to be suffered by the defendant. Only if the balance tilts "decidedly" in favor of the plaintiff is a right to preliminary injunctive relief warranted.

Direx Israel, 952 F.2d at 816.  Here, the balance tips decidedly in favor of the Trustee and the bankruptcy estate.  As stated above, Carotek and ECS have been granted relief from the automatic stay effective July 15, 2011, for the purpose of allowing the Lawsuit to continue.  In the Lawsuit Carotek and ECS contend that the Patents are invalid.  This is an issue that still needs to be decided by the District Court.  If the Motion is granted, the Trustee will need to retain counsel to represent him in the Lawsuit.  The potential costs and risks of the litigation are significant, and the Trustee does not have sufficient funds in the estate to provide for a proper defense of the Patents in the Lawsuit.  If the Court grants the Motion, the value of the Patents may be significantly diminished because the Trustee does not have the resources to mount a proper defense in connection with the Markman hearing.

The public policy favors the Trustee.

21.     The public policy clearly favors the Trustee.  Otherwise, section 363(m) would not exist.  There is a policy interest in having bankruptcy sales deemed final so that the Trustee can efficiently administer chapter 7 estates.  The facts in this matter do not justify this clear preference for allowing bankruptcy sales to stand.

Conclusion

22.     Carotek's Motion must be denied because it can not show any of the necessary factors for imposing a stay pending the appeal.  There is no likelihood that Carotek will prevail on the merits of its appeal.  Carotek will suffer no injury if the stay is denied, while the Trustee and the bankruptcy estate will certainly be harmed if the Motion is granted.  Finally the public policy interests are decidedly in the Trustee's favor.

WHEREFORE, Kobayashi Ventures, LLC, by counsel requests that the Court enter an order denying Carotek's Motion and for such other relief as this Court deems appropriate.

Respectfully submitted,
**Kobayashi Ventures, LLC**
By counsel

/s/ James W. Reynolds
_____
**James W. Reynolds, Esquire, VSB No. 33226**
**Counsel for Kobayashi Ventures, LLC**
**ODIN FELDMAN & PITTLEMAN PC**
**9302 Lee Highway, Suite 1100**
**Fairfax, Virginia 22031**
**Direct: 703-218-2134**
**Fax: 703-218-2160**
**E-Mail: Jim.Reynolds@ofplaw.com**

## Certificate of Service

I hereby certify that on this 28th day of June, 2011, a copy of this Opposition to Carotek, Inc.'s Motion for (I) Stay of Order Granting Trustee's Motion to Approval Sale of Property of the Estate at Public Auction During Court Hearing and Approving Sale to Kobayashi Ventures, LLC and (II) Approval of Supersedeas Bond was sent electronically to Kevin McCarthy, Trustee and Kenneth Misken, Esquire pursuant to this Court's applicable standing order.

/s/ James W. Reynolds
_____
James W. Reynolds

#1424437v1  jwrpl-opposition motion stay  53894/00001