**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| EQUAPHOR INCORPORATED | ) | Case No. 10-20490-BFK |
| | ) | Chapter 7 |
| Debtor | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on the Trustee's Motion (Docket No. 116) to Compel the Turnover of the files of Whiteford Taylor & Preston, LLP (hereinafter, "WTP"), former counsel for the Debtor, Equiphor Incorporated ("Equiphor," or the "Debtor"). WTP filed an Objection to the Motion (Docket No. 122), as did three Individual Defendants, Molly Hale, J.B. Doherty and Edward C. Spiva (Docket Nos. 119, 120 and 121). For the reasons stated below, the Motion will be granted.

**Findings of Fact**

The basic facts are not in dispute. WTP has acted as corporate counsel for the Debtor since May 2007. WTP's Objection to Trustee's Motion, Docket No. 122, p. 2. WTP has maintained a general corporate representation file, known as Matter No. 00001. *Id.*

On August 13, 2010, two shareholders of the Debtor filed a Derivative Action Complaint in the Chancery Court in Delaware (*Bamber, et al. v. Dechman, et al.*) (hereinafter, the "Derivative Action"). *Id.* at 3. The lawsuit was filed by the law firms of Rosenthal, Monhait & Goddess, P.A., and Shapiro Haber & Urmy, LLP on behalf of the derivative shareholder plaintiffs.

WTP was engaged to represent the interests of three of the individual Defendants, Molly Hale, J.B. Doherty, and Edward C. Spiva (the "Individual Defendants"). Ms. Hale is alleged to

1

be the former full time Controller of Equiphor, as well as a Director of the company. WTP Objection, Docket No. 122, Exh. A, ¶ 9. Mr. Doherty is identified as a Director of the company. *Id*. at ¶ 10. Mr. Spiva is identified as having been a Director of the Company until February 26, 2010. *Id.* at ¶ 11.[1]

WTP also was engaged to represent the Debtor, which had been named as a "Nominal Defendant," in the Complaint. *Id.* at ¶ 12. For the joint representation of the Individual Defendants and the Debtor, WTP opened a second file, Matter No. 00002. WTP's Objection, p. 1. The Debtor paid WTP a retainer of $15,000 for the representation of the Individual Defendants, as well as for its own representation. *Id.* at p. 3. On September 2, 2010, WTP entered its appearance in the derivative action on behalf of the Individual Defendants and on behalf of the Debtor. Trustee's Memorandum in Support, Docket No. 117, Exh. A.

On December 16, 2010, Equiphor filed a voluntary petition under Chapter 7 in this Court. Docket No. 1. Mr. McCarthy is the duly appointed Chapter 7 Trustee. On October 3, 2011, the Court approved, as special litigation counsel for the Trustee, the employment of Shapiro Haber & Urmy LLP, and Rosenthal, Monhait & Goddess, P.A., pursuant to Bankruptcy Code Section 327(e), under a contingent fee retainer arrangement. Docket No. 108.

On January 18, 2012, WTP filed a Motion with the Delaware Chancery Court, seeking to withdraw as counsel for the Individual Defendants. That Motion was granted on January 27, 2012. WTP's Objection, Docket No. 122, p. 3.

---

[1] Two other individual defendants, James W. Dechman and John T. Fiore, were not represented by WTP. Two other corporate Defendants, Kobayashi Ventures, LLC and Monitoring Technology, LLC, also were not represented by WTP.

2

**Conclusions of Law**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for the Eastern District of Virginia, dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) ("[O]rders to turn over property of the estate").[2]

The Court has reviewed the Trustee's Motion to Compel Turnover (Docket No. 116), the Objections of WTP (Docket No. 122), the Objections of the three Individual Defendants (Docket Nos. 119, 120, and 121), and the Reply Memorandum of the Trustee (Docket No. 123). The Court also has heard the arguments of the parties. The matter is ripe for decision.

1. *The Court Will Grant the Trustee's Motion for Turnover.*

Section 542(e) of the Code provides as follows:

> *Subject to any applicable privilege*, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

11 U.S.C. § 542(e) (emphasis added).

The question here is the meaning of the term "any applicable privilege." Specifically, the Court must address the issue of the attorney-client privilege in the context of the common interest privilege, discussed below.[3]

---

[2] At argument, WTP expressly consented to the entry of an Order in this matter without the need for the filing of an adversary proceeding. Two of the Individual Defendants, Messrs. Doherty and Spiva, were present, and did not object to the entry of an Order without the filing of an adversary proceeding. Ms. Hale was not present. Under the circumstances, the Court finds a waiver of any objections to the entry of an Order compelling a turnover of the documents without the filing of an adversary proceeding.

[3] Rule 501 of the Federal Rules of Evidence provides:

> The common law — as interpreted by United States courts in the light of reason and experience — governs a claim of privilege unless any of the following provides otherwise:
> - the United States Constitution;

Any discussion of the attorney-client privilege in the context of a corporate Chapter 7 bankruptcy case must start with the Supreme Court's opinion in *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985). In *Weintraub,* a unanimous Court held that the Chapter 7 Trustee controls, and is able to waive, the attorney-client privilege as to pre-bankruptcy communications between the Debtor and its counsel.[4] Although *Weintraub* did not involve the joint representation of officers and directors along with the corporation, two of the corporation's officers (Frank McGhee and Andrew McGhee) objected to the Trustee's intended waiver of the corporation's attorney-client privilege. The Court held that the Trustee had the power to waive the privilege over the objections of former management, noting:

> [T]he rule suggested by respondents – that the debtor's directors have this power – would frustrate an important goal of the bankruptcy laws. In seeking to maximize the value of the estate, the trustee must investigate the conduct of prior management to uncover and assert causes of action against the debtor's officers and directors. See generally 11 U.S.C. §§ 704(4), 547, 548. It would often be extremely difficult to conduct this inquiry if the former management were allowed to control the corporation's attorney-client privilege and therefore to control access to the corporation's legal files. To the extent that management had wrongfully diverted or appropriated corporate assets, it could use the privilege as a shield against the trustee's efforts to identify those assets. The Code's goal of uncovering insider fraud would be substantially defeated if the debtor's directors were to retain the one management power that might effectively thwart an investigation into their own conduct.

*Weintraub*, 471 U.S. at 353-54.

---

- a federal statute; or
- rules prescribed by the Supreme Court.

But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed.R.Evid. 501. This is not a case in which applicable state law governs for purposes of a claim or defense, with respect to the claim of privilege. Accordingly, federal law governs the issue in this case. *In re Hotels Nev., LLC*, 458 B.R. 560, 567-71 (Bankr. D. Nev. 2011); *Ramette v. Bame (In re Bame)*, 251 B.R. 367, 372 (Bankr. D. Minn. 2000).

[4] The Court was careful to note that its holding applied only to corporations, and not to individuals. *Weintraub*, 471 U.S. at 356 ("[O]ur holding today has no bearing on the problem of individual bankruptcy, which we have no reason to address in this case").

The Supreme Court, therefore, came down squarely in favor of a turnover of the corporation's legal files to the Chapter 7 Trustee, notwithstanding the objections of former management. *Id.* at 358. As noted, however, *Weintraub* did not involve the joint representation of officers and directors, together with the corporation. To address this issue, the Court turns to the common interest privilege.

The common interest privilege, also known as the joint defense privilege, is universally accepted. *See* Edna Selan Epstein, *The Attorney-Client Privilege and Work Product Doctrine* 196-220 (4th ed. 2001). Where parties are jointly represented, "both have a right to all communications either may have had with the attorney, as well as a right to the attorney's files." *Id.* at p. 197. The problem, of course, is where there is a falling out among the jointly represented parties, as here.

> The Restatement (Third) of Law Governing Lawyers states the rule as follows:
>
> Unless the co-clients have agreed otherwise, a communication described in Subsection (1) [communication that otherwise qualifies as privileged] is not privileged as between the co-clients in a subsequent adverse proceeding between them.

Restatement (Third) of the Law Governing Lawyers, § 75 (2000). As the Third Circuit noted:

> The great caveat of the joint-client privilege is that it only protects communications from compelled disclosure to parties outside the joint representation. When former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable. DEL. R. EVID. § 502(d)(6); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 75(2). This rule has two bases: (1) the presumed intent of the parties, and (2) the lawyer's fiduciary obligation of candor to both of the parties. *Id.* § 75 cmt. d.

*Teleglobe Commc'ns Corp. v. BCE, Inc. (In re Teleglobe Commc'ns Corp.),* 493 F.3d 345, 366 (3rd Cir. 2007). *See also In re Mirant Corp.*, 326 B.R. 646, 649 (Bankr. N.D. Tex. 2005) ("It is well established that, in a case of a joint representation of two clients by an attorney, one client

5

may not invoke the privilege against the other client in litigation between them arising from the matter in which they were jointly represented").

WTP and the Individual Defendants place great reliance on the fact that the corporation is named as a "nominal defendant" in the shareholders' Complaint. In doing so, WTP and the Individual Defendants imply that the interests of the Individual Defendants are entitled to greater weight than those of the Debtor (and now, its creditors). However, while the Debtor may have been named as a nominal defendant, there is no such thing as a nominal client of a law firm. Further, there is no support in the case law for a "nominal defendant exception" to the principle that all clients are entitled to an attorney's files. The corporation's status as a nominal defendant is of no consequence in considering the common interest privilege of the parties.

WTP and the Individual Defendants also rely on the Third Circuit's decision in *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120 (3d Cir. 1986). The Court first notes that the *Bevill, Bresler* decision preceded the Third Circuit's decision in *Teleglobe* by nine years, and the Court finds the Third Circuit's decision in *Teleglobe* to be a more comprehensive discussion of the topic of joint representation. The Court also notes that the decision in *Bevill, Bresler* involved counsel engaged by the corporation, not a true joint representation situation, as in this case. Moreover, the Third Circuit in *Bevill, Bresler* ultimately held that the privilege was that of the corporation, and that the position taken by the officers was "contrary to the public policies identified by the Supreme Court in *Weintraub*." 805 F.2d at 125.

In *Bevill, Bresler*, the Third Circuit approved of a five-part test for the assertion of a personal claim of attorney-client privilege as to communications with corporate counsel, as follows:

6

> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.

*Id*. at 123.

As noted, the real issue in *Bevill, Bresler* was whether the corporate officers were jointly represented by corporate counsel at all. The Third Circuit affirmed the District Court's finding that the officers had not sustained their burden of proof on the issue of joint representation. *Id*. at 126. For purposes of this Motion, and having reviewed the submissions of the three Individual Defendants, the Court will accept that the Individual Defendants have met the first four of the above factors. However, the Court finds that the Individual Defendants failed to meet the fifth factor, that "the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company." *Id.* at 123. In *Bevill, Bresler*, the Court specifically noted that the District Court's formula did not preclude the possibility that the officers may assert their personal privilege "as to matters not related to their role as officers of the corporation." *Id*. at 125. Further, the Court noted that the District Court allowed for the possibility that some of their communications were personal, "except insofar as they were related to their role as corporate officers." *Id.*

WTP's defense of the officers in this case was directly related to the affairs of the corporation; indeed, the only reason that the Individual Defendants were sued (or at least the *sine qua non* of their having been named defendants) was that they occupied positions as officers and directors of the company. There has been no showing that any of the advice sought from WTP

7

was personal in nature, and not related to the Individual Defendants' positions as officers and directors of the company. The Court finds that the Individual Defendants have not met their burden that WTP's advice to them was personal in nature and unrelated to their duties as officers and directors of the corporation.

For these reasons, the Court will order the turnover of all of the WTP files to the Trustee or his counsel.

2.  *WTP's Proposed Use of the Petition Date is Rejected.*

As noted, the Debtor filed its petition under Chapter 7 on December 16, 2010. Docket No. 1. On January 18, 2012, WTP filed a Motion with the Delaware Chancery Court, seeking to withdraw as counsel for the Individual Defendants. WTP's Objection to Trustee's Motion, Docket No. 122, p. 3. That Motion was granted on January 27, 2012. *Id.* WTP suggests that the Petition Date "is a clear cleavage in time after which the interests of the Debtor and the [Individual Defendants] diverged." *Id.* at p. 6. The Court rejects the use of the petition date as being arbitrarily selected. Further, there appears to be no support for the use of this kind of date in the case law. The Court will not employ an arbitrarily selected cutoff date for the purpose of production of the jointly privileged files to the Trustee.

3.  *Opinion Work Product Documents.*

WTP asserts that with respect to a certain category of documents, namely, notes and memoranda of counsel, these documents are protected work product, and are not a part of the client files to which the Trustee is entitled. In both the Third Circuit (where the action is pending in State court), and in this Circuit, opinion work product - that is, work product that contains the mental impressions or theories of counsel - enjoys nearly absolute protection from disclosure under the rules of discovery. *See In re Cendant Corp. Sec. Litig.,* 343 F.3d 658, 662 (3d Cir.

8

2003); *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999); Fed.R.Civ.P. 26(b)(3)(B) ("If the court orders discovery of those materials [documents prepared in anticipation of litigation or for trial], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation"). Under Rule 26(b), even where there is a showing of substantial need for the materials, and that the party seeking production cannot, without undue hardship, obtain the substantial equivalent by other means (Fed.R.Civ.P. 26(b)(3)(A)(ii)), the Court still must protect against the disclosure of counsel's mental impressions. Fed.R.Civ.P. 26(b)(3)(B).

But this is not a discovery dispute in the ordinary sense of the term. It is a motion to compel the turnover of the law firm's files under 11 U.S.C. § 542(e) to the party who now stands in the shoes of the former client, the Debtor. Under these circumstances, the courts have been uniform in holding that the work product doctrine does not prevent the turnover of the files. *See Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1272 (10th Cir. 1999) (rejecting work product claim in connection with turnover of attorney's files); *Loeffler v. Lanser (In re ANR Advance Transp. Co.),* 302 B.R. 607, 617 (E.D. Wis. 2003) ("To grant the law firms work product immunity under the circumstances present here would not serve the purpose of the work product doctrine. Clients are not adversaries of their lawyers, and the zone of privacy that the work product rule protects was designed to shield lawyers from their opponents, not their clients"); *Gardner, Willis, Sweat & Handelman, LLP v. Kelly (In re Golden Grove Pecan Farm),* 460 B.R. 349, 352-53 (Bankr. M.D. Ga. 2011); *In re Ginn-LA St. Lucie Ltd., LLLP*, 439 B.R. 801, 809 (Bankr. S.D. Fla. 2010) (holding that "New York follows the majority view that upon termination of the attorney-client relationship, where no claim for unpaid legal fees is outstanding, the client is presumptively accorded full access to the entire attorney's file"); *Rushton v. Woodbury & Kesler, P.C. (In re*

9

*C.W. Mining Co.)*, 442 B.R. 44, 48 (Bankr. D. Utah 2010) (assuming that documents were work product, Trustee overcame the work product doctrine with a showing of need); *Teleglobe Commc'ns Corp. v. BCE, Inc. (In re Teleglobe Commc'ns Corp.*, No. 02-11518 MFW, 2006 WL 2568371, at *16 (D. Del. Feb. 22, 2006) ("Because work product is created for the benefit of the client, the interest in protecting documents from an adversary is not present in this case." (citing *Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir. 1992) ("the work product doctrine does not apply to the situation in which a client seeks access to documents or other tangible things created or amassed by his attorneys during the course of the representation"))); *In re Am. Metrocomm Corp.*, 274 B.R. 641, 654-55 (Bankr. D. Del. 2002). *See also* Edna Selan Epstein, *The Attorney-Client Privilege and Work Product Doctrine* 607 (4th ed. 2001) ("Based on *Weintraub*, it would seem to follow without question that a trustee-in-bankruptcy for a corporate entity has a right to the work product of the debtor's attorney"). WTP will be ordered to turn over its entire files, notwithstanding any claim or assertion of work product.

    4. *Use of the Privileged Documents.*

Finally, WTP and the Individual Defendants seek to restrict the Trustee's use of the privileged material. Specifically, WTP and the Individual Defendants seek an Order from this Court "that the Trustee is forbidden from further disseminating that information or using it against third parties, without all joint parties' consent." WTP's Objection to Trustee's Motion, Docket No. 122, p. 6. On this issue, WTP and the Individual Defendants are correct.

One party to a joint privilege or common defense cannot unilaterally waive the privilege. Edna Selan Epstein, *The Attorney-Client Privilege and Work Product Doctrine* 218 (4th ed. 2001). *Teleglobe*, 493 F.3d at 363 ("[W]aving the joint-client privilege requires the consent of

all joint clients"); *In re Crescent Resources, LLC*, 457 B.R. 506, 529 (Bankr. W.D. Tex. 2011) (same).  Moreover, Restatement (Third) of the Law Governing Lawyers provides that:

> If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged under §§ 68-72 and relates to matters of common interest is privileged as against third persons, and any co-client may invoke the privilege, unless it has been waived by the client who made the communication.

§ 75(1) (2000).

We are, therefore, left with the situation where the Trustee is entitled to production of the attorney's files, and the Trustee is entitled to use the documents in litigation with the three, jointly represented Individual Defendants; however, the Trustee is not entitled to waive the privilege in litigating against third parties.  There are two other individual defendants, and two other corporate defendants in the Derivative Action, who were not represented by WTP.  *See supra* note 1.  The Court is not going to give the Trustee license to waive the privilege as against the interests of the jointly represented Individual Defendants, whom it should be noted, have a continuing interest in the confidentiality of their legal file equal to that of the Trustee.  How this plays out in Delaware, and whether a severance of the action against the Individual Defendants would be in order, is best left to the Chancellor in Delaware.  For now, the Court will make it clear that the Trustee is not entitled to waive the privilege unilaterally in the litigation against the non-jointly represented defendants.[5]

---

[5] WTP's use of the phrase "further disseminating that information *or using it against third parties*," (WTP's Objection to Trustee's Motion, Docket No. 122, p. 6 (emphasis added)), is, in the Court's view, an overstatement of the use restriction.  *See supra* pp. 10.  To be more precise, asking questions at a deposition or at trial of a non-jointly represented party based on knowledge gleaned from privileged documents will not violate the Court's Order that the Trustee not waive the privilege.  However, showing a privileged document to a non-jointly represented witness, or reading a privileged document into the record, or a portion thereof, probably would.

**Conclusion**

For the foregoing reasons, the Court will order as follows:

1. WTP will be ordered to turn over its entire client files, in both Matter Nos. 00001 and 00002, including all correspondence, e-mails and other forms of communication with the Individual Defendants, to the Trustee or the Trustee's counsel, notwithstanding any claim or assertion of work product.

2. The Trustee will be ordered not to waive the privilege without the prior consent of the Individual Defendants. A separate Order shall issue.

Date: _____

Brian F. Kenney
United States Bankruptcy Judge

Copies to:

Equaphor Incorporated
12587 Fair Lakes Cir., #303
Fairfax, VA 22033
Debtor

Steven B. Ramsdell, Esquire
Tyler, Bartl, Ramsdell & Counts, P.L.C.
300 N. Washington St., Suite 202
Alexandria, VA 22314
Counsel for the Debtor

Kevin R. McCarthy, Esquire
McCarthy & White, PLLC
1751 Pinnacle Dr. Ste 1115
McLean, VA 22102
Chapter 7 Trustee

Christopher A. Jones, Esquire
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
Counsel for Whiteford, Taylor & Preston, LLP

Molly Hale
136 Kelley Road
Fredericksburg, VA 22405
Former Director of Equaphor, Inc.

Edward C. Spiva
2204 Skylark Drive
Westminster, MD 21157
Former Director of Equaphor, Inc.

J.B. Doherty
212 Cheswold Hill Road
Haverford, PA 19041
Former Director of Equaphor, Inc.